# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karla Ivonne Maske,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-04891-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Karla Ivonne Maske's Application for Disability Insurance Benefits by the Social Security Administration ("SSA"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 16, Def. Br.), and Plaintiff's Reply (Doc. 17, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 11, R.) and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 18–40) and remands for further proceedings.

**I.  BACKGROUND**

Plaintiff filed her Application on August 19, 2014 for a period of disability beginning on August 29, 2012. (R. at 21.) Plaintiff's claim was denied initially on May 14, 2015, and upon reconsideration on November 23, 2015. (R. at 21.) Plaintiff testified at a hearing on November 1, 2017. (R. at 21.) The ALJ denied Plaintiff's Application on

January 31, 2018. (R. at 18–40.) That decision became final on October 23, 2018 when the Appeals Council denied Plaintiff's request for review. (R. at 1–6.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: (1) bilateral carpal tunnel syndrome ("CTS"), status post right release; (2) cervical degenerative disc disease, status post lumbar surgery; and (3) obesity. (R. at 23.)

The ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 34.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.) The ALJ also determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with some limitations. (R. at 25.) They include: standing and/or walking for four hours and sitting for six hours in an eight-hour workday; frequently handling, fingering, and feeling bilaterally; never climbing ladders, ropes, or scaffolds; never crawling; occasionally climbing ramps or stairs; occasionally balancing, stooping, kneeling, crouching, and operating foot controls with the left lower extremity; and avoiding more than occasional exposure to extreme cold and heat, excessive loud noise, excessive vibration, dangerous machinery with moving mechanical parts, and unprotected heights. (R. at 25.) Consequently, the ALJ found that Plaintiff could perform her past work as a teacher aide II, title clerk secretary, and secretary. (R. at 33.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a

scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

…

## III. ANALYSIS

Plaintiff argues that the ALJ erred by (1) rejecting Plaintiff's symptom testimony; and (2) rejecting the opinions of Plaintiff's treating physician and examining physician.

### A. The ALJ gave sufficient reasons for rejecting Plaintiff's symptom testimony

Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting her symptom testimony. (Pl. Br. at 22–27.) At the hearing, Plaintiff testified that she lies down or reclines for 90 percent of each day. (R. at 53.) She estimated that she can sit for approximately 20 minutes at a time and stand for approximately 10 minutes before needing to sit down. (R. at 55–56.) The ALJ discounted Plaintiff's testimony for three reasons. First, the ALJ found that Plaintiff's activities of daily living ("ADLs") were inconsistent with her allegations of pain. (R. at 28–30.) Second, the ALJ determined that the objective medical evidence did not "fully" support Plaintiff's alleged limitations. (R. at 27–30.) Third, the ALJ found that Plaintiff's symptoms improved with treatment.[1] (R. at 27–30.)

Although credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Once the claimant has presented medical evidence of an impairment, the ALJ "may not reject [the] claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the ALJ is permitted to consider the lack of objective support along with the nature, frequency, and intensity of any pain; the effectiveness of treatment; and the claimant's ADLs. *Id.*

…

…

---

[1] The Court need not address Plaintiff's improvement because the ALJ's other reasons are specific, clear and convincing, and supported by substantial evidence.

### 1. Plaintiff's ADLs are inconsistent with her alleged limitations

Plaintiff traveled to Mexico in 2015 and Kentucky in 2017. (R. at 28–30, 547, 736.) In January 2015, Plaintiff reported that she cared for her four children and performed a variety of household chores, including doing laundry and dishes, changing diapers, feeding her children, making her bed, washing the sink, and shopping. (R. at 218–26.) Finally, Plaintiff reported that she cared for her ex-husband in 2017 after he broke his neck in a motor vehicle accident. (R. at 879, 900.) As part of that episode, Plaintiff drove her injured ex-husband back to the United States from Mexico. (R. at 900.)

During the hearing, Plaintiff explained that her care consisted only of bringing water to her ex-husband and ensuring he had his medication. (R. at 48–49.) Plaintiff also testified that her mother-in-law and sister helped her at times. (R. at 30.) Nevertheless, after weighing the evidence, the ALJ correctly concluded that Plaintiff's ADLs were "not fully consistent with her allegations of complete prostration" and instead found that she can "perform a reduced range of light work." (R. at 27, 30.)

Plaintiff argues that the ALJ failed to explain how Plaintiff's ADLs undermine her credibility. (Pl. Br. at 26–27.) The Court disagrees. The ALJ was not required to methodically cite each item of evidence upon which she relied. Rather, where an ALJ has summarized and interpreted the pertinent facts and conflicting evidence, the Court is permitted to draw reasonable inferences. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Here, the ALJ considered the severe limitations that Plaintiff alleged—namely, she must spend 90 percent of each day reclined or lying down—and determined they were inconsistent with Plaintiff's ability to travel and care for others. (R. at 30 ["When asked about caring for her youngest child while the others are at school, her response that she 'sits in a recliner' while her 'three year old runs around' is simply not believable."].) This was a specific, clear, and convincing reason to reject Plaintiff's testimony and it was supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ADLs are probative of a claimant's credibility where the level of activity is inconsistent with the alleged limitations); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693

(9th Cir. 2009) (finding that an ALJ properly relied on evidence that suggested the claimant's allegations regarding the severity of his limitations were exaggerated).

### 2. The objective medical evidence does not support Plaintiff's alleged limitations

The ALJ also discredited Plaintiff's testimony because Plaintiff's alleged limitations were not supported by the objective medical evidence. (R. at 27–30.) Although this reason is insufficient, alone, to reject a claimant's testimony, an ALJ is permitted to consider it. *Burch*, 400 F.3d at 681. Here, the ALJ's rationale is supported by substantial evidence.

The ALJ considered the objective medical records and determined that although they were consistent with *some* pain and limitations, they were inconsistent with the extreme limitations that Plaintiff alleged. (R. at 28.) For example, some records reflect that, at times, Plaintiff had a limited or painful range of motion, tenderness in her spine, positive straight leg raises, and an antalgic gait. (R. at 28–29.) However, other records show that Plaintiff had good strength in her lower extremities, negative straight leg raises, a range of motion within functional limits, and an ability to ambulate without an assistive device. (R. at 28.) The ALJ also found that MRIs of Plaintiff's spine showed mild degenerative changes, but not enough to cause the debilitating pain and limitations Plaintiff alleged. (R. at 28.) With regard to Plaintiff's CTS, although her Tinel's and Durkan's testing was positive, records reflect that Plaintiff had good range of motion in her fingers and wrists, good grip strength, and no atrophy or weakness in her hand muscles. (R. at 28.) Plaintiff also received carpal tunnel release injections and experienced 80 percent improvement on her right side. (R. at 28–29.) The ALJ acknowledged that Plaintiff suffers from painful and limiting conditions. (R. at 27.) However, the ALJ concluded that the record as a whole did not support Plaintiff's symptom allegations. (R. at 27.)

Plaintiff seeks to challenge this determination by arguing that the ALJ's evaluation of her medical records was improper. (Pl. Br. at 24.) However, the ALJ is permitted to evaluate the medical evidence and resolve conflicts, as she did in this case. *Carmickle v.*

*Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830–31 (9th Cir. 1996)). Although the medical records may support an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational. Thus, the Court must uphold it. *Burch*, 400 F.3d at 679–81 (an ALJ's decision should be upheld when the evidence is susceptible to more than one rational interpretation).

Plaintiff also argues that the ALJ did not specifically identify which medical records undermined which portions of her testimony. (Pl. Br. at 26–27.) Relatedly, Plaintiff argues that the ALJ did not adequately cite the record to support her findings and instead based her decision on mere disbelief of Plaintiff's statements. (Pl. Br. at 26–27.) However, as previously discussed, the ALJ is not required to recite the facts and evidence in a particular manner. *Magallanes*, 881 F.2d at 755. Here, the ALJ thoroughly summarized the facts and conflicting evidence and evaluated their interplay with Plaintiff's testimony.

In sum, the ALJ gave sufficient reasons for discounting Plaintiff's symptom testimony and therefore did not err.

### B. The ALJ did not err by rejecting the opinion of Plaintiff's treating physician but erred by rejecting the opinion of Plaintiff's examining physician

Plaintiff's remaining argument is that the ALJ erred by rejecting the opinion of her treating physician, Dr. Manish Sahni, and the opinion of an examining physician, Dr. John Peachey. (Pl. Br. at 10–22.)

Although "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record].'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). An ALJ may only reject a treating or examining physician's contradicted medical opinion "for specific and legitimate reasons that are supported by substantial

evidence in the record." *Carmickle*, 533 F.3d at 1164. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

### 1. The ALJ did not err by giving little weight to the opinion of Plaintiff's treating physician, Dr. Manish Sahni

In September 2017, Dr. Sahni completed a Medical Assessment in which he opined that Plaintiff can stand and/or walk for fewer than two hours and sit for approximately two hours in an eight-hour workday; must use a cane to ambulate and be able to change positions every 15 to 30 minutes; can occasionally lift and/or carry fewer than 10 pounds, balance, handle, finger, feel, and reach,; and can never climb, stoop, kneel, crouch, or crawl. (R. at 862–64.)

The ALJ gave Dr. Sahni's opinion little weight because (1) he offered no explanation for his opinions; (2) his opinions were unsupported by his treatment notes; and (3) his opinions were inconsistent with the record as a whole. (R. at 30.) The Court finds that these reasons are specific, legitimate, and supported by substantial evidence.

Preliminarily, Dr. Sahni's assessment is not discreditable merely because it was expressed in a "check-box" form. To be sure, the regulations provide that the SSA will give more weight to well-explained medical opinions. 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Nevertheless, check-box assessments that are substantiated by a physician's treatment records may be entitled to consideration that an otherwise unexplained opinion would not receive. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

Dr. Sahni treated Plaintiff from October 2016 through September 2017 (R. at 676–701), but his treatment notes do not clarify or substantiate his opinion regarding Plaintiff's limitations. Nor do they lend support for his opinion. Although Plaintiff repeatedly complained of arm, neck, and back pain, her physical examinations were generally unremarkable aside from some joint tenderness and muscle spasms. (R. at 30.)

Plaintiff argues that the ALJ usurped the role of a physician by rejecting Dr. Sahni's opinion in favor of her own interpretation of the evidence. (Pl. Br. at 13.) This mischaracterizes the ALJ's actions in this case. The ALJ was required to weigh Dr. Sahni's opinion and, in doing so, was permitted to review Dr. Sahni's treatment records to determine whether they provided support for his opinion. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.") (citations omitted). The ALJ determined that the record as a whole did not support Dr. Sahni's opinion, and the Court finds that substantial evidence supports that conclusion. Therefore, the ALJ did not commit reversible error when rejecting Dr. Sahni's opinion.[2] *Burch*, 400 F.3d at 679–81.

### 2. The ALJ erred by rejecting the opinion of the examining physician, Dr. John Peachey

In March 2015, Dr. Peachey performed an internal medicine examination and opined that Plaintiff can occasionally lift fewer than 10 pounds; stand and/or walk for at least two but fewer than six hours in an eight-hour workday; sit for fewer than six hours in an eight-hour workday; occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. (R. at 478-80.)

The ALJ gave Dr. Peachey's opinion partial weight for three reasons. (R. at 31.) First, the ALJ stated that Dr. Peachey's treatment notes "fail[] to support his opinion" because the notes show that, although Plaintiff had tenderness and painful range of motion in her spine, she had good strength in her extremities. (R. at 31.) Second, the ALJ stated that Plaintiff reported improvement in her pain and range of motion after undergoing a

---

[2] Plaintiff also argues that the ALJ erred by failing to discuss Dr. Sahni's Pain Functional Capacity Questionnaire, in which Dr. Sahni opined that Plaintiff's "moderately severe pain" would affect her concentration and ability to complete tasks. (Pl. Br. at 16.) Plaintiff is correct that the ALJ erred by not separately discussing Dr. Sahni's Pain Questionnaire and giving specific and legitimate reasons for rejecting it. However, this error was harmless because it is clear from the record that the ALJ's ultimate determination was adequately supported by substantial evidence—thus, the error was "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038.

- 9 -

lumbar fusion in 2014. (R. at 31.) Third, the ALJ stated that Plaintiff's ADLs, including traveling to Mexico, tending to personal care, preparing meals, cleaning, shopping, and caring for four children, were inconsistent with Dr. Peachey's opinion. (R. at 31.)

The Court finds that the ALJ's reasons for rejecting Dr. Peachey's opinion are not supported by substantial evidence. Plaintiff argues that "the ALJ failed to build a logical bridge between the evidence and her conclusion." (Pl. Br. at 20.) The Court agrees. The ALJ thoroughly discussed Plaintiff's medical records when analyzing Plaintiff's symptom testimony. However, the ALJ did not identify with sufficient specificity how Plaintiff's medical records are inconsistent with Dr. Peachey's opinion. *Carmickle*, 533 F.3d at 1164. Having strength in one's extremities doesn't necessarily mean, for example, that a person can sit or stand for more than six hours in a workday.

Next, with regard to Plaintiff's improvement from a lumbar fusion, she reported, and the ALJ acknowledged, that the relief was short-term. (R. at 31.) Therefore, this was not a valid reason for the ALJ to discredit Dr. Peachey's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (occasional signs of improvement do not undermine consistent impairments in the overall record).

Finally, with regard to Plaintiff's ADLs, the ALJ did not adequately explain how Plaintiff's vacation to Mexico or her ability to care for herself, her children, and her household were inconsistent with Dr. Peachey's opined-to limitations. On this issue, it is important to note that Dr. Peachey viewed Plaintiff's limitations as being much less severe than the limitations to which Plaintiff testified—as noted, Plaintiff stated that she must spend 90 percent of each day reclined or lying down, whereas Dr. Peachey opined that Plaintiff can stand for two to six hours in an eight-hour workday. Although the ALJ properly concluded that Plaintiff's ADLs were inconsistent with *her* professed limitations, it doesn't necessarily follow that Plaintiff's ADLs were also inconsistent with *Dr. Peachey's* opined-to limitations—for example, it may be that a person who is able to stand for two to six hours during an average work day is able to go on occasional vacations or care for a child. *Garrison*, 759 F.3d at 1016 (stressing that ALJs must cautiously consider

that impairments can preclude work and still be consistent with more than lying in bed all day).

Because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Peachey's opinion, the Court next must consider whether the error was harmless. An error is harmless if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. The relevant inquiry is not whether the ALJ would have made a different decision absent the error, but whether the ALJ's decision is legally valid despite the error. *Carmickle*, 533 F.3d at 1162. Here, the ALJ's error in rejecting Dr. Peachey's opinion was not harmless because the ALJ did not include the less-than-sedentary limitations to which Dr. Peachey opined when calculating Plaintiff's RFC. Therefore, the error was not "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038.

**C.     The proper remedy is to remand for further proceedings**

Plaintiff asks that the Court apply the credit-as-true rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 28.)

The credit-as-true rule applies if three elements are present. *Treichler*, 775 F.3d at 1099–1102. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if these requirements are met, the Court retains the flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act. *Garrison*, 759 F.3d at 995.

In this case, the ordinary remand rule applies.  Further proceedings would be useful to enable to ALJ to address, in more detail, whether Dr. Peachey's treatment notes support his opinion and whether Plaintiff's ADLs are inconsistent with that opinion.  Additionally, the Court harbors serious doubt as to whether Plaintiff is, in fact, disabled.  Therefore, a remand for further proceedings is the proper remedy.

**IT IS THEREFORE ORDERED** reversing the January 31, 2018 decision of the Administrative Law Judge.  (R. at 18–40.)

**IT IS FURTHER ORDERED** remanding this matter for further consideration consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 19th day of February, 2020.

_____
Dominic W. Lanza
United States District Judge