**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karla Ivonne Maske, | No. CV-18-04891-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's motion for attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") (Doc. 20) and memorandum in support thereof (Doc. 21). For the following reasons, Plaintiff's motion will be granted.

**BACKGROUND**

I. The Agency Proceedings

Plaintiff applied to the Social Security Administration ("SSA") for disability benefits, with the period of disability beginning on August 29, 2012. (R. at 21.) The Administrative Law Judge ("ALJ") denied Plaintiff's application on January 31, 2018. (R. at 18–40.) That decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1–6.)

The ALJ evaluated Plaintiff's disability based on the following severe impairments: (1) bilateral carpal tunnel syndrome, status post right release; (2) cervical degenerative disc disease, status post lumbar surgery; and (3) obesity. (R. at 23.) The ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 34.)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.) The ALJ also determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with some limitations, which include: standing and/or walking for four hours and sitting for six hours in an eight-hour workday; frequently handling, fingering, and feeling bilaterally; never climbing ladders, ropes, or scaffolds; never crawling; occasionally climbing ramps or stairs; occasionally balancing, stooping, kneeling, crouching, and operating foot controls with the left lower extremity; and avoiding more than occasional exposure to extreme cold and heat, excessive loud noise, excessive vibration, dangerous machinery with moving mechanical parts, and unprotected heights. (R. at 25.) Consequently, the ALJ found that Plaintiff could perform her past work as a teacher aide II, title clerk secretary, and secretary. (R. at 33.)

II.     The District Court Proceedings

Plaintiff sought review of the ALJ's decision. (Doc. 1.) Plaintiff argued the ALJ erred by rejecting the opinions of her treating physician (Dr. Sahni) and an examining physician (Dr. Peachey) and failed to provide sufficient reasons for rejecting her symptom testimony. (Doc. 15.) Defendant argued there was no error. (Doc. 16.)

On February 19, 2020, the Court issued an order reversing the ALJ's decision and remanding for further consideration. (Doc. 18 at 12.) Although the Court concluded that the ALJ had provided sufficient reasons for rejecting Plaintiff's symptom testimony (*id.* at 4-7) and that the ALJ did not err by rejecting the opinion of Dr. Sahni (*id.* at 8-9), the Court also concluded that the ALJ erred by rejecting the opinion of Dr. Peachey (*id.* at 9-11).

The ALJ's first stated reason for rejecting Dr. Peachey's opinion was inconsistency between his opinion and his treatment notes. Dr. Peachey's opinion was as follows: Plaintiff can occasionally lift fewer than 10 pounds; stand and/or walk for at least two but fewer than six hours in an eight-hour workday; sit for fewer than six hours in an eight-hour workday; occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and never

climb ladders, ropes, or scaffolds. (*Id.* at 9.) The ALJ stated that Dr. Peachey's treatment notes failed to support this opinion because the notes showed that, although Plaintiff had tenderness and painful range of motion in her spine, she had good strength in her extremities. The Court deemed this rationale inadequate and insufficiently specific because "[h]aving strength in one's extremities doesn't necessarily mean . . . that a person can sit or stand for more than six hours in a workday." (*Id.* at 10.)

The ALJ's second stated reason for rejecting Dr. Peachey's opinion was that Plaintiff reported improvement in her pain and range of motion after undergoing a lumbar fusion in 2014. The Court deemed this explanation inadequate because Plaintiff "reported, and the ALJ acknowledged, that the relief was short-term" and, under Ninth Circuit law, "occasional signs of improvement do not undermine consistent impairments in the overall record." (*Id.*)

The ALJ's final stated reason for rejecting Dr. Peachey's opinion was that Plaintiff's activities of daily living ("ADLs")—which included traveling to Mexico, tending to personal care, preparing meals, cleaning, shopping, and caring for four children—were inconsistent with that opinion. The Court deemed this explanation inadequate because "the ALJ did not adequately explain how Plaintiff's vacation to Mexico or her ability to care for herself, her children, and her household were inconsistent with Dr. Peachey's opined-to limitations," noting that, for example, "it may be that a person who is able to stand for two to six hours during an average work day is able to go on occasional vacations or care for a child." (*Id.*)

The Court found that the ALJ's error regarding Dr. Peachey was "not harmless because the ALJ did not include the less-than-sedentary limitations to which Dr. Peachey opined when calculating Plaintiff's [residual functional capacity]." (*Id.* at 11.) As for the remedy, the Court concluded that "the ordinary remand rule applies" because (1) "[f]urther proceedings would be useful to enable to ALJ to address, in more detail, whether Dr. Peachey's treatment notes support his opinion and whether Plaintiff's ADLs are inconsistent with that opinion," and (2) "the Court harbors serious doubt as to whether

Plaintiff is, in fact, disabled." (*Id.* at 12.)

III.   The EAJA Motion

On May 19, 2020, Plaintiff filed the pending motion seeking EAJA fees (Doc. 20) and a supporting memorandum (Doc. 21).

On June 2, 2020, Defendant filed a response in opposition. (Doc. 22.)

On June 10, 2020, Plaintiff filed a reply. (Doc. 26.)

**DISCUSSION**

A "request for attorney's fees should not result in a second major litigation." *Pierce v. Underwood*, 487 U.S. 552, 563 (1988). In most cases, when a Plaintiff prevails in a Social Security appeal and requests EAJA fees, the parties agree that an award of fees is appropriate and the sole dispute, if any, involves the amount of fees to be awarded. Here, Defendant opposes an award of EAJA fees, arguing that such an award is inappropriate because "the government's underlying actions and litigation position were substantially justified." (Doc. 22 at 2.) Defendant argues, in the alternative, that Plaintiff's fee request is unreasonably high and should be reduced.

I.   Entitlement To Fees

**A.   Legal Standard**

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . in any civil action (other than cases sounding in tort) . . . brought by or against the United States . . . , unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The 'position of the United States' includes both the government's litigation position and the underlying agency action giving rise to the civil action." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013).

In the Social Security context, the underlying agency action giving rise to the civil action is the ALJ's decision. *Id.* In resolving the question of entitlement to attorneys' fees, the Court should consider "only the procedural issues on which the district court reversed" and "need not consider the Secretary's position on any other questions" or "the ultimate

issue of disability." *Flores v. Shalala*, 49 F.3d 562, 566 (9th Cir. 1995), *as amended on denial of reh'g* (June 5, 1995). "It is the government's burden to show that its position was substantially justified." *Meier*, 727 F.3d at 870.

To be "substantially justified," the government's litigation position and the underlying agency action must have a "reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565; *see also Ibrahim v. DHS*, 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc). A determination that an ALJ's decision "was unsupported by substantial evidence is therefore a strong indication that the 'position of the United States' . . . was not substantially justified." *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005). It is "only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Id.* (internal quotation marks omitted). Because "substantial evidence" is a "deferential substantial evidence standard of review" and refers to "such relevant evidence as a reasonable person might accept as adequate to support a conclusion," a finding that substantial evidence is lacking usually means "the government's underlying action was not substantially justified." *Meier*, 727 F.3d at 872.

However, this is only a generality, and exceptions exist. Although the Ninth Circuit "has been clear that when an agency's decision is unsupported by substantial evidence it is a strong indication that the position of the United States is not substantially justified, [it] has never stated that *every* time [a] court reverses and remands the ALJ's decision for lack of substantial evidence the claimant should be awarded attorney's fees." *Decker v. Berryhill*, 856 F.3d 659, 664 (9th Cir. 2017). Thus, "success on the merits is not dispositive of an EAJA application." *Id.* "That the government lost (on some issues) does not raise a presumption that its position was not substantially justified." *Ibrahim*, 912 F.3d at 1168.

**B.    Analysis**

As the prevailing party, Plaintiff is entitled to attorneys' fees unless Defendant demonstrates that the government's position "with respect to the issue on which the court based its remand" was "substantially justified." *Flores*, 49 F.3d at 566. Thus, the

preliminary question is whether the ALJ was substantially justified in rejecting the opinion of Plaintiff's examining physician, Dr. Peachey. (Doc. 18 at 9-11.) If the ALJ's decision (the government's underlying position) was not substantially justified, the Court must award fees and "need not address whether the government's litigation position was justified." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014). *See also Ibrahim*, 912 F.3d at 1167 ("[W]e have consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees.") (internal quotation marks omitted).

The Court found, among other things, that "the ALJ did not identify with sufficient specificity how Plaintiff's medical records are inconsistent with Dr. Peachey's opinion" and further found that the error was "not harmless." (Doc. 18 at 10-11.) The Ninth Circuit has recognized that an award of EAJA fees may be premised on such an error. The government has an "obligation to consider the evidence properly before denying a claim for disability evidence" and "[i]t is hardly inequitable to award attorney's fees where the [government] commits procedural errors that are not 'substantially justified," as this "ensures that attorneys will receive fair compensation for their defense of claimants' procedural rights." *Flores*, 49 F.3d at 569 n.10. EAJA fees are appropriate in cases where, as here, the ALJ failed to provide the requisite specificity. *Shafer v. Astrue*, 518 F.3d 1067, 1072 (9th Cir. 2008) ("The ALJ rejected a treating physician's opinion in favor of a non-treating physician's opinion without providing clear and convincing reasons, and committed several errors in assessing Shafer's residual functional capacity. It follows a fortiori the government's defense of the ALJ's procedural errors was not substantially justified, and Shafer is entitled to attorneys' fees under the EAJA.").

Defendant argues that "the ALJ gave several reasons for giving only partial weight to Dr. Peachey's opinion," "all of which had *some* substance or support in the record," and that "*some* evidence in the record supported the ALJ's findings and conclusions." (Doc. 22 at 5-6, emphasis added.) This argument is unavailing. The Court concluded that the ALJ failed to make the necessary connections between the evidence and her conclusion.

The existence of "some evidence" that could support an ALJ's decision, which the ALJ herself failed to identify or invoke, is insufficient to establish that the ALJ's decision was substantially justified. *Shafer*, 518 F.3d at 1071-72. *See also Gundy v. Astrue*, 500 Fed. App'x 609, 611 (9th Cir. 2012) (reversing district court's denial of EAJA fees where the ALJ failed to "make findings setting forth specific, legitimate reasons for [rejecting a physician's opinion] that are based on substantial evidence in the record").

Defendant's suggestion that "some evidence" supporting the ALJ's finding "is sufficient to satisfy the lower standard of substantial justification" (Doc. 22 at 6) is incorrect. Defendant cites a 1991 case affirming a denial of EAJA fees where "some evidence supported the Secretary's position." *Williams v. Bowen*, 966 F.2d 1259, 1261 (9th Cir. 1991). But this is not the current standard in the Ninth Circuit, at least with respect to the sort of errors at issue here. *Flores*, 49 F.3d at 570 ("Previous Ninth Circuit cases assessing whether the claimant is entitled to recover attorney's fees have based their decision on an evaluation of whether there was 'some evidence' supporting the Secretary's decision that the claimant was not disabled. *See, e.g.,* [*Bowen*]."); *Hampton v. Colvin*, 2015 WL 1884313, *3 (N.D. Cal. 2015) ("[T]he Ninth Circuit case law since *Bowen* has considered the issue of substantial justification more critically. *Flores* indicat[ed] that *Bowen* was one of a line of cases focused on the improper inquiry of ultimate disability rather than the procedural error on which remand was granted [and noted] that 'lower courts have found that the government's position was not substantially justified when the ALJ failed to set forth specific, legitimate reasons supporting an adverse credibility determination.'").

Thus, although the Court agrees with Defendant that "the question of reasonableness in the context of the EAJA is a *distinct* question from . . . the 'substantial evidence' standard" (Doc. 22 at 4, emphasis added), this observation fails to explain *how* the standards vary, much less why that distinction compels the denial of fees here. In *Pierce*, the Supreme Court clarified that "[t]o be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard

for Government litigation of which a reasonable person would approve." 487 U.S. at 566-68. Defendant's proposed standard of "some evidence" appears to echo this rejected standard—it's merely a step above "no evidence," in other words, utter frivolousness.

The government also points out that "the deferential substantial evidence standard of review directs a reviewing court to defer to the ALJ's finding even when another interpretation of the evidence is possible." (Doc. 22 at 8.) To the extent this is intended to be an argument, it misses the mark and cuts against the government's position on the issue of EAJA fees. The standard under which the Court reviewed the ALJ's decision is deferential, yet the Court still found that reversal was necessary.

For the government's position to be "substantially justified" even though the ALJ's decision lacked "substantial evidence," this would need to be "a decidedly unusual case." *Thangaraja*, 428 F.3d at 874. Such "decidedly unusual" cases do exist. For example, in May 2017, the Ninth Circuit decided two cases in which the question was whether the government was substantially justified where the ALJ's decision was justified at the time it issued but new evidence that arose after the decision led the district court to conclude the ALJ's decision was not supported by substantial evidence. *Decker*, 856 F.3d at 665; *Gardner v. Berryhill*, 856 F.3d 652, 657 (9th Cir. 2017). Obviously, in both cases, the "underlying agency action giving rise to the civil action," *i.e.,* the ALJ's decision, was substantially justified, so the remaining question was whether the government's litigation position was also substantially justified. In both cases, the government opposed remand, but in only one of the two cases was the government substantially justified. In *Decker*, because it was unclear under the existing law whether the new evidence in that case ("two pages of blood test results, without further explanation") required remand, the government was substantially justified in opposing remand. *Decker*, 856 F.3d at 665. But in *Gardner*, where the new evidence made it plain that the ALJ's decision could not be affirmed (because the only reasons the ALJ provided for giving little weight to a particular doctor's opinion were no longer viable in light of the new evidence), the government lacked a reasonable basis for opposing remand. *Gardner*, 856 F.3d at 657.

In another case, the Ninth Circuit found the ALJ's decision to be substantially justified where the ALJ had to determine whether the plaintiff was disabled in the distant past (but was no longer disabled in the present). *Campbell v. Astrue*, 736 F.3d 867, 868-69 (9th Cir. 2013). Although "the ALJ erred in her determination," the task the ALJ faced was unusually difficult, and the ALJ's effort "to extrapolate what [plaintiff's] injury may have been in 1996 from other evidence" was enough to show that the case was "one of the 'unusual' cases where attorneys' fees should not be awarded under the EAJA." *Id.* The Ninth Circuit emphasized that "[t]he difference between examining current medical records to make a decision about a present condition and extrapolating from medical records to make a decision about a past condition distinguishes this case from *Meier*." *Id.* at 869. Here, the government has not argued that any special circumstance makes this an unusual case, and the Court cannot discern any.[1]

Finally, Defendant argues that "[b]ecause the ALJ's findings had a reasonable basis in law and in fact, the government's defense of those findings in this Court likewise had a reasonable basis in law and fact." (Doc. 22 at 9.) But the Court's conclusion that substantial evidence was lacking means the ALJ's decision lacked "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Thus, the Court cannot accept Defendant's premise that "the ALJ's findings had a reasonable basis in law and in fact." And "[b]ecause the government's underlying position was not substantially justified," the Court "need not address whether the government's litigation position was justified." *Meier*, 727 F.3d at 872.

…

…

---

[1] Even though the government prevailed on other issues (aside from the one that resulted in remand), and even though the Court has its doubts as to whether Plaintiff is actually disabled, these considerations don't bear on the substantial-justification analysis. *Flores*, 49 F.3d at 566; *Tobeler*, 749 F.3d at 835; *see also Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998) ("Whether the claimant is ultimately found to be disabled or not, the government's position at each stage must be 'substantially justified.'").

II.     Reasonableness Of The Fee Amount Requested

Having determined that Plaintiff is eligible for EAJA fees, the Court must determine what fee is reasonable. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Jean*, 496 U.S. at 161 ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*."). This is "now called the 'lodestar' method" of determining the reasonableness of fees. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).

Plaintiff's counsel charged the statutory maximum rates, and the reasonableness of the hourly rates is not in dispute.

The parties dispute whether the amount of time Plaintiff's counsel billed was reasonable. As a preliminary matter, the reasonableness of the number of hours spent is necessarily a case-specific determination, and it is improper to generalize from other cases and impose "a de facto cap" on the number of hours compensable under the EAJA. *Costa*, 690 F.3d at 1134. The Ninth Circuit has emphasized that dubbing any Social Security case "routine" would be "a misnomer" because the cases "are often highly fact-intensive and require careful review of the administrative record, including complex medical evidence," such that two cases involving the same issues might nevertheless require different amounts of work. *Id.* at 1134 n.1. Courts generally should defer to "the winning lawyer's professional judgment," and if "the amount of time requested for a particular task is too high," the Court must explain why. *Id.* at 1136.

Plaintiff originally requested $10,719.25 in her motion for EAJA attorneys' fees, as her counsel spent 4.2 hours on her case in 2018, 46 hours in 2019, and 2.1 hours in 2020. (Doc. 21 at 10; Doc. 21-2 at 2-3.) Defendant responds that "[i]f the Court awards fees, it should reduce them and award no more than $8,282.25." (Doc. 22 at 11.) In reply, Plaintiff

asserts that "[t]he additional 5.5 hours" Plaintiff's counsel spent preparing the reply brief, "at the current hourly rate of $205.25, when added to the original EAJA request, equals $11,848.13, which should be the current EAJA award." (Doc. 19 at 10.)

Defendant challenges the reasonableness of Plaintiff's fee request on three grounds: (1) "Plaintiff's attorney has requested duplicative fees by billing for two attorneys to write the opening brief," (2) Plaintiff's attorney "billed for excessive hours for preparing the complaint, which did not need to be lengthy," and (3) "Plaintiff's attorney has also billed for emails without providing sufficient detail to show that these tasks were compensable under the EAJA." (Doc. 22 at 9.)

The Court finds no fault with the fact that two attorneys collaborated on this case and recognizes that legal collaboration often requires multiple attorneys to review the same documents in order to contribute meaningfully to the drafting and editing process. *Cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) (when associates work on a case, the partner who supervises them must review the documents); *Costa*, 690 F.3d at 1136 ("[S]ometimes 'the vicissitudes of the litigation process' will require lawyers to duplicate tasks."). The Court agrees with Plaintiff's assertion that "if this were a case brought by some big-shot downtown law firm, no one would blink an eye about more than one attorney working on a case" (Doc. 26 at 7-8), and the Court declines to "blink an eye" here. "[T]he Court will not second-guess the amount of time Plaintiff's counsel spent on briefing the winning arguments in this case." *Barker v. Comm'r of Soc. Sec. Admin.*, 2019 WL 6893013, *4 (D. Ariz. 2019). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112.

Furthermore, the Court is unpersuaded by Defendant's argument that Plaintiff's counsel should have expended less effort on drafting the complaint. Defendant challenges the 3.7 hours Plaintiff's counsel spent "reviewing the record and preparing the complaint" because Defendant views a complaint that is "seven pages long and contains arguments

1  and case citations" as "excessive" and "unnecessary to state a claim and establish
2  jurisdiction." (Doc. 22 at 10.) Although it's true that this Court's review generally focuses
3  on the briefs, the Court accepts Plaintiff's argument that "a persuasive complaint might
4  avoid further litigation by convincing the agency that its position is unjustified and the case
5  merits remand for administrative action to correct the agency's errors." (Doc. 26 at 11.)
6  Such a scenario is contemplated by statute. 42 U.S.C. § 405(g) ("The court may, on motion
7  of the Commissioner of Social Security made for good cause shown before the
8  Commissioner files the Commissioner's answer, remand the case to the Commissioner of
9  Social Security for further action . . . ."). Plaintiff cites a recent case where this occurred.
10 (Doc. 26 at 11, citing *Guzman v. Commissioner of Social Security Administration*, 2:20-
11 cv-00317-SMB.) An expenditure of 3.7 hours of Plaintiff's counsel's time in the hope of
12 such an outcome is not unreasonable.

13       Finally, Defendant challenges a total of 0.9 hours billed over the course of three
14 years for emails where the subject matter of the email was not always disclosed in the
15 itemization of services. Defendant did not include much discussion or argument on this
16 point and cited no legal authority. Nevertheless, the Court agrees that the simple
17 designation of "Email from Mr. Mitchell: (redacted)" given for the time entries on 12/26/18
18 (0.1), 2/1/19 (0.1), 3/12/19 (0.1), and 6/11/19 (0.1) is impermissibly vague. "Plaintiff's
19 counsel, of course, is not required to record in great detail how each minute of his time was
20 expended." *Hensley*, 461 U.S. at 437 n.12. "But at least counsel should identify the general
21 subject matter of his time expenditures." *Id.* This is a low bar; for example, Plaintiff's
22 counsel's description on 5/14/19, "Email from Mr. Mitchell *re edits*," is sufficient. (Doc.
23 21-2 at 2, emphasis added.) Of the challenged billing entries in Plaintiff's itemization of
24 services, there are four—adding up to 0.4 hours, total—that are too vague for the Court to
25 determine whether the expenditure of time was reasonable.

26       Nevertheless, the Court will not exercise its discretion to reduce the award by a mere
27 0.4 hours where it appears that counsel's time was used efficiently in this case. The Court
28 feels comfortable concluding that the four emails in question were more likely legitimate

time expenditures than a scheme to drive up the fees request. If Plaintiff's counsel had several dozen entries like these, and/or if a greater amount of time had been billed for entries like these, the Court would be more concerned. Although the Court will not reduce the award, Plaintiff's counsel is admonished to provide "the general subject matter of his time expenditures" for all future billing entries. *Hensley*, 461 U.S. at 437 n.12.

Having prevailed entirely in the fees motion, Plaintiff is also entitled to the fees incurred in litigating it. *Jean*, 496 U.S. at 163 n.10.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for EAJA fees (Doc. 20) is **granted** and Plaintiff is awarded $11,848.13 in attorneys' fees.

**IT IS FURTHER ORDERED** that, pursuant to the parties' stipulation, if the government determines that Plaintiff does not owe a debt subject to offset under the Treasury Offset Program, 31 U.SC. § 3716(c), and the government agrees to waive the requirements of the Anti-Assignment Act, 31 U.S.C. § 3727, the government shall pay the EAJA award to Plaintiff's counsel. If there is a debt owed under the Treasury Offset Program, the remaining EAJA award after offset will be paid by a check made out to Plaintiff but delivered to Plaintiff's counsel.

Dated this 9th day of November, 2020.

Dominic W. Lanza
United States District Judge